UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ENTES INDUSTRIAL PLANTS
CONSTRUCTION AND ERECTION
CONTRACTING CO. INC.,

                    Petitioner,

      v.

THE KYRGYZ REPUBLIC and THE
MINISTRY OF TRANSPORT AND
COMMUNICATIONS OF THE KYRGYZ
REPUBLIC,

                    Respondents.

Civ. No. 18-2228

---

## PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD

Andreas A. Frischknecht
Theodore R. Debonis (pending *pro hac* admission)

**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax (212) 257-6950

*Attorneys for Petitioner Entes Industrial Plants*
*Construction and Erection Contracting Co. Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

PARTIES ................................................................................................................................. 3

JURISDICTION AND VENUE ................................................................................................. 5

FACTS AND BACKGROUND ................................................................................................. 6

   A.  The Parties' Contract ................................................................................................ 6

   B.  Entes' Performance of the Contract .......................................................................... 8

   C.  The Arbitration ......................................................................................................... 9

ARGUMENT ......................................................................................................................... 15

   A.  Entes Has Satisfied All of the Statutory Conditions for Confirmation and Enforcement ............... 15

   B.  None of the Limited Grounds to Refuse Confirmation and Enforcement Exist ............................. 17

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Africard Co. v. Republic of Niger*,
   210 F. Supp. 3d 119 (D.D.C. 2016) .................................................................................. 16

*Argentine Republic v. National Grid PLC*,
   637 F.3d 365 (D.C. Cir. 2011) ........................................................................................ 15

*BCB Holdings Ltd. v. Government of Belize*,
   110 F. Supp. 3d 233 (D.D.C. 2015) ........................................................................... 15, 18

*Belize Bank Limited v. Government of Belize*,
   191 F. Supp. 3d 26 (D.D.C. 2016) ............................................................................. 15, 17

*Belize Social Developmental Ltd. v. Government of Belize*,
   794 F.3d 99 (D.C. Cir. 2015) ........................................................................................ 16

*Compagnie des Bauxites de Guinee v. Hammermills, Inc.*,
   Civ. A. No. 90–0169 (JGP), 1992 WL 122712 (D.D.C. May 29, 1992) ........................... 15

*Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation*,
   361 F.3d 676 (2d Cir. 2004) .......................................................................................... 5

*Creighton Ltd. v. Government of State of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ........................................................................................ 6

*Garb v. Republic of Poland*,
   440 F.3d 579 (2d Cir. 2006) .......................................................................................... 4

*Ministry of Defence & Support for the Armed Forces of the Islamic Republic of Iran v. Frym*,
   814 F.3d 1053 (9th Cir. 2016) ........................................................................................ 4

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   294 F.3d 82 (D.C. Cir. 2002) .................................................................................... 5, 17

*Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003) .................................................................................. 1, 4

*Stati v. Republic of Kazakhstan*,
   199 F. Supp. 3d 179 (D.D.C. 2016) ............................................................................... 17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) ......................................................................................... 4

**Statutes**

9 U.S.C. § 201 ........................................................................................................ 5, 18

9 U.S.C. § 202 ............................................................................................................. 18

9 U.S.C. § 203 ........................................................................................................ 5, 17

9 U.S.C. § 204 ............................................................................................................... 6

9 U.S.C. § 207 ...................................................................................................... 17, 18

28 U.S.C. § 1330 ........................................................................................... 5, 6, 16, 17

28 U.S.C. § 1391 ..................................................................................................... 6, 17

28 U.S.C. § 1603 ........................................................................................................... 6

28 U.S.C. § 1605 ............................................................................................... 6, 16, 17

28 U.S.C. § 1606 ..................................................................................................... 6, 17

28 U.S.C. § 1607 ..................................................................................................... 6, 17

28 U.S.C. § 1608 ..................................................................................................... 6, 17

Petitioner Entes Industrial Plants Construction and Erection Contracting Co. Inc. ("Entes" or "Petitioner"), by and through its attorneys, alleges as follows in support of its petition (the "Petition") for entry of an order confirming and recognizing, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention" or the "Convention") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (the "FAA"), the final arbitral award (the "Award") dated September 29, 2015 in the arbitration (the "Arbitration") between Petitioner on the one hand and Respondent The Ministry of Transport and Communications of the Kyrgyz Republic (the "Ministry") on the other hand. The Arbitration was captioned *Entes Industrial Plants Construction and Erection Contracting Co. Inc. v. The Ministry of Transport and Communications of the Kyrgyz Republic*, and was conducted in Bishkek, Kyrgyz Republic under the 1976 version of the UNCITRAL Arbitration Rules. Petitioner Entes respectfully seeks an order: (1) entering judgment in Petitioner's favor against the Kyrgyz Republic (the "Republic") in the amount of the Award, with interest and costs as provided therein; (2) awarding Petitioner post-judgment interest at the applicable statutory rate; and (3) awarding Petitioner such further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioner brings this proceeding under the FAA and the New York Convention to confirm and recognize the Award rendered by an international arbitral tribunal against the Ministry and to enter judgment against the Republic in the aggregate principal amount of approximately $16.6 million, plus interest. The Ministry is treated as the Republic itself under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"). *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234–35 (D.C. Cir. 2003) (holding that Iran's "Ministry

of Foreign Affairs must be treated as the state of Iran itself" because this Circuit has "adopted a categorical approach: if the core functions of the entity are governmental, it is considered the foreign state itself").

The underlying dispute that gave rise to the Award arose out of a contract between Petitioner and the Ministry executed in August 1999 (the "Contract").  Under the Contract, Entes agreed to act as contractor for a road construction project called the Second Road Rehabilitation Project Bishkek-Osh Road Civil Works (the "Works"), a job that required Entes to rehabilitate two sections of the 620-kilometer road connecting the cities of Bishkek and Osh in the Republic. In the Contract, the location of the Works was described as follows:

> The Works are located roughly south-west of Bishkek in a mountainous area of the Tien Shan range with elevations ranging from about 1000 m to 2200 m.  The terrain is mountainous and much of the road alignment is tortuous having numerous tight curves and steep gradients.

The Works required construction or repair to the carriageway, shoulders, slope stability, drainage system, structures and road furniture, and road alignments. The scope of work also required repairing existing bridges and tunnels, and broadening those structures to accommodate the full width of the new road.

Entes initially targeted a December 3, 2002 completion date.  Following extensive delay, and corresponding requests to prolong the timeframe for completion, Entes finished the project on October 12, 2005.  The causes of delay included design changes, late instructions, additional work added to the project, material shortages, inclement weather, and political unrest, in particular the Tulip Revolution of March-April 2005.  On completion of the project, on March 17, 2006, Entes submitted a Statement of Completion to the engineering consultants overseeing the Works that claimed an additional $22,982,039.25, primarily in compensation for costs for the

extended period of construction.  However, the engineering consultants granted Entes only an additional $1,161,870.19.  Entes appealed the decision, but was rejected.

On January 15, 2009, Entes commenced arbitration seeking to recover the amounts rightfully owed by the Ministry, including the costs associated with the extended period of completion for the Works.  The total amount sought by Entes was $25,359,472.27, plus interest and Arbitration costs.  The Ministry counterclaimed, seeking $487,238 primarily for its legal fees.

A three-member tribunal was constituted and initial instructions provided to Entes and the Ministry in December 2009.  The Arbitration subsequently suffered serious delays.  Entes submitted its Statement of Claim on March 15, 2010; the Ministry submitted its Statement of Defence on March 31, 2011; and the tribunal held a procedural hearing on April 27, 2011 to provide further instruction regarding written submissions and an evidentiary hearing.  An evidentiary hearing was finally held in October 2011 in Bishkek, and the parties submitted additional expert reports, correspondence, and claims for costs from 2012 through 2015.  On September 29, 2015, the tribunal unanimously awarded Entes $16,388.631.59 for costs related to the Works and $225,000 representing the Ministry's share of the costs and fees of the Arbitration, plus interest at one month LIBOR plus 2%.

## PARTIES

1.       Petitioner Entes Industrial Plants Construction and Erection Contracting Co. Inc. is a company organized under the laws of Turkey, with its principal place of business at Büyükdere Cad. No. 107, Kat 5 Bengün Han Gayrettepe – Istanbul, Turkey.

2.     Respondent The Ministry of Transport and Communications of the Kyrgyz Republic is part of the Government of the Kyrgyz Republic with its headquarters at 42 Isanov Street, Conference hall, 6/F, MOTC Bishkek City 720017, Kyrgyz Republic.

3.     Respondent The Kyrgyz Republic is a foreign state located in Central Asia, bordering Kazakhstan, Uzbekistan, Tajikistan and China.

4.     For all purposes in this action, including jurisdiction under the FSIA, the Ministry and the Republic should be treated as one and the same.  The D.C. Circuit has held that a foreign state's Ministry of Foreign Affairs must be treated as the foreign state itself under the FSIA.  *See Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 234-35 (D.C. Cir. 2003) (holding that Iran's Ministry of Foreign Affairs must be "treated as the state of Iran itself" because "[t]he conduct of foreign affairs is an important and 'indispensable' governmental function").  The same holds true for a foreign state's other ministries that perform governmental functions (such as the Ministry here).  *See, e.g., Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Frym,* 814 F.3d 1053, 1055 n.3 (9th Cir. 2016) (noting that Iran's "Ministry of Defense is an inseparable part of the Republic of Iran, and it therefore qualifies as a 'foreign state' within the meaning of the FSIA"); *Garb v. Republic of Poland,* 440 F.3d 579, 595 (2d Cir. 2006) (treating Poland's Ministry of the Treasury as part of the Polish state itself for purposes of determining the Ministry's immunity from suit under the FSIA); s*ee also Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 153 (D.C. Cir. 1994) (holding that a foreign state's "armed forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state").

5.     This Court has personal jurisdiction over the Ministry and the Republic in this proceeding regardless of the nature or extent of the Ministry's contacts with Washington, D.C. or

the United States because the Republic, as a foreign state, is not entitled to due process protections. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) ("[F]oreign states are not 'persons' protected by the Fifth Amendment.").

6.      Accordingly, the Ministry should, for all purposes, be treated as the Republic itself and thus indistinguishable, jurisdictionally and for purposes of confirmation and enforcement, from the Republic. *See Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n,* 361 F.3d 676, 677 (2d Cir. 2004) (holding that "a foreign arbitration award can be confirmed and enforced against a sovereign nation where the arbitration agreement was signed by an organ of that nation's central government and where that organ—and not the nation itself—participated in the underlying arbitration proceedings"). Notably, the Superior Court of Justice of Ontario, Canada has already entered judgment against the Republic itself on the very same Award that is the subject of this Petition. *See Entes v. Kyrgyz Republic,* 2016 ONSC 7221.[1]

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this proceeding pursuant to 9 U.S.C. §§ 201 and 203, which provide that the United States District Courts shall have original subject matter jurisdiction over a proceeding governed by the New York Convention. Both the Republic and the United States are signatories to the New York Convention, which calls for the recognition and confirmation of the Award in favor of Petitioner.

8.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. §

---

[1]      *Available at* https://www.canlii.org/en/on/onsc/doc/2016/2016onsc7221/2016onsc7221.html.

1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement.  The Ministry and the Republic are the same "foreign state" within the meaning of 28 U.S.C. § 1603(a).  The FSIA denies immunity to a foreign state in an action to enforce an international commercial arbitral award.  28 U.S.C. § 1605(a)(6); *see Creighton Ltd. v. Gov't of State of Qatar,* 181 F.3d 118, 123 (D.C. Cir. 1999) (section 1605(a)(6) "applies by its terms" to the "enforcement of any arbitral award rendered within the jurisdiction of a signatory country" to the New York Convention).  Therefore, Respondents are not immune from suit in this action, and this Court has subject matter jurisdiction.

9.     The Court has personal jurisdiction over Respondents pursuant to 28 U.S.C. § 1330(b), which provides that a United States District Court shall have personal jurisdiction over a foreign state that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608(a).  Petitioner will serve Respondents according to 28 U.S.C. § 1608(a), which governs service on foreign states.

10.     Venue is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f).

## **FACTS AND BACKGROUND**

### A.  **The Parties' Contract**

11.     In the beginning of the 1990s, the Government of Kyrgyzstan decided to rehabilitate the 620-kilometer road that connects the country's two largest cities, Bishkek and Osh.  Akinci Decl. Ex. A, at ¶ 24.[2]  The Bishkek-Osh Road traverses the Tien Chan Mountains in central Kyrgyzstan.  *Id.*

---

[2]     Citations to the "Akinci Decl." refer to the Declaration of Professor Doctor Ziya Akinci in Support of Petitioner's Petition to Confirm and Enforce a Foreign Arbitral Award, dated September 24, 2018.

12.     After reviewing public bids, the Ministry awarded the project to Entes.  *Id.,* at ¶ 26.  On August 30, 1999, Claimant and Respondent executed the Contract detailing the scope of work required, timeframe for completion, and other terms of agreement.  *Id.*

13.     The Contract consists of a number of individual documents; the most important for purposes of the Arbitration and this Petition are the following:

- The Letter of Acceptance and Minutes of Contract Negotiations;
- The bid by the Contractor;
- Conditions of Particular Application (CPA);
- General Conditions of Contract (GCC);
- Special Specifications;
- General Specifications;
- Special Requirements; and
- The Priced Bill of Quantities.

*Id.*, at ¶ 27.

14.     The Special Specifications described the location of the project as follows:

> The Works are located roughly south-west of Bishkek in a mountainous area of the Tien Shan range with elevations ranging from about 1000 m to 2200 m.  The terrain is mountainous and much of the road alignment is tortuous having numerous tight curves and gradients.

*Id.,* at ¶ 28.

15.     The scope of work included rehabilitation and improvement work of the carriageway, shoulders, slope stability, drainage system, structures and road furniture, as well as the construction of new alignments in some sections of the road.  Additionally, existing bridges required repair and broadening to accommodate the full width of the road, and two short tunnels required repair.  *Id.,* at ¶29.

16.     The Contract provides for settlement of disputes by UNCITRAL arbitration in Bishkek in accordance with the law in force in the Republic.  *Id.,* at ¶ 31.  The civil engineering

consultancy Japan Overseas Consultants Co. Ltd. was appointed as the Engineer, with the duties and authority defined in Clause 2.1 of the Conditions of Particular Application.  *Id.,* at ¶ 32.

**B. <u>Entes' Performance of the Contract</u>**

17.     Entes began work on the Works in January 2000 (*id.,* at ¶ 38) but soon experienced a variety of problems that caused delay and additional costs including design changes, late instructions and additions to the project, material shortages, inclement weather, and political unrest.  *Id.,* at ¶ 35.

18.     Although the original contractual Time for Completion was December 3, 2002, Entes completed its work on October 12, 2005.  *Id.,* at ¶¶ 39, 40.

19.     Between July 2002 and June 2005, Entes applied for five extensions of the time for completion and was granted extensions totaling 637 days out of the total 1,043-day delay.  *Id.,* at ¶¶ 40-45.

20.     In May and December 2003, the parties executed four addenda to the Contract that included extensions of the timeframe for completion.  *Id.,* at ¶ 33.  Entes submitted claims for additional compensation for the delays and increased costs.  *Id.,* at ¶ 34.  Some of Entes' submissions were accepted by the Ministry and Engineer and some were rejected.  *Id*.

21.     Following completion of the Works, Entes submitted its Statement of Completion to the Engineer on March 17, 2006.  *Id.,* at ¶ 47.  In its Statement of Completion, Entes claimed compensation in the amount of $24,532,304.24 for additional, unpaid costs related to project delays.  *Id.,* at ¶ 48.  On May 18, 2005, the Engineer awarded Entes $1,187,035.20 in additional compensation.  *Id.,* at ¶ 49.  The Engineer subsequently rejected Entes' appeal of the $1,187,035.20 amount.  *Id.,* at ¶¶ 50, 51.

### C. **The Arbitration**

22. On January 15, 2009, Entes initiated arbitration proceedings pursuant to Clause 67.3 of the General Conditions of Contract ("GCC") by Notice of Arbitration to Respondent. *Id.,* at ¶ 52. Clause 67.3 of the GCC provides:

> Any dispute in respect of which:
>
> (a) the decision, if any, of the Engineer has not become final and binding pursuant to sub-clause 67.1, and
>
> (b) amicable settlement has not been reached within the period stated in Sub-clause 67.2,
>
> shall be finally settled, unless otherwise specified in the Contract, under the Rules of Conciliation of Commerce by one or more arbitrators appointed under such Rules. The said arbitrator/s shall have full power to open up, review and revise any decision, opinion, instruction, determination, certification or valuation of the Engineer related to the dispute.
>
> Neither party shall be limited in the proceedings before such arbitrator/s to the evidence or arguments put before the Engineer for the purpose of obtaining his said decision pursuant to Sub-Clause 67.1. No such decision shall disqualify the Engineer from being called as a witness and giving evidence before the arbitrator/s on any matter whatsoever relevant to the dispute.
>
> Arbitration may be commenced prior to or after completion of the Works, provided that the obligations of the Employer, the Engineer and the Contractor shall not be altered by reason of the arbitration being conducted during the progress of the Works.

Akinci Decl. Ex. A, at ¶ 139.

23. Clause 67.3 of the Conditions of Particular Application ("CPA") modified Clause 67.3 of the GCC by replacing the reference to "the Rules of Conciliation and Arbitration of the International Chamber of Commerce" with "the UNCITRAL arbitration rules" and adding that "the arbitration shall take place in Bishkek." *Id.,* at ¶ 140.

9

24.     An arbitral tribunal (the "Tribunal") consisting of Professor Turgut Öz (appointed by Entes), Professor Sergei Lebedev (appointed by the Ministry), and Michael E. Schneider (chosen by the two party-appointed arbitrators as Presiding Arbitrator) was duly established to adjudicate the parties' claims.  *Id.,* at ¶¶ 19-23.

25.     The Tribunal issued several procedural orders and established dates for the exchange of documents and a final hearing.  The full procedural history of the Arbitration is set forth in the Award.  *See id.,* at ¶¶ 52-131.

26.     Entes filed a Statement of Claim on March 15, 2010.  *Id.,* at ¶ 57.

27.     On April 14, 2010, the Ministry's arbitration counsel wrote to the Tribunal and, with reference to then-existing civil unrest in the Republic, asked "to postpone the proceedings for a period not less than 6 months, at least until the formation of new Government and obtaining of authorities (power of attorney) on representation of interests of the [Ministry]."  *Id.,* at ¶ 58.

28.     Over the ensuing six months, the Tribunal granted extensions of the period of time within which the Ministry's counsel was to confirm its continued authority to represent the Ministry in the Arbitration.  *Id.,* at ¶¶ 59-67.

29.     On December 30, 2010, the law firm representing the Ministry confirmed that its authority had been restored.  *Id.,* at ¶ 68.

30.     The Tribunal thereafter extended the Ministry's deadline for filing a Statement of Defence until March 31, 2011, and the Ministry submitted its Statement on that date.  *Id.,* at ¶ 69.

31.     The Tribunal held a four-day hearing beginning October 18, 2011.  *Id.,* at ¶ 95. Following the hearing, the Tribunal accepted additional expert reports, supporting documentation, and final written submissions from the parties.  *Id.,* at ¶¶ 103-105.

32.     In its Post-Hearing Submission dated February 20, 2012, Entes detailed its request

for relief as follows:

(1) An award from the Tribunal of additional payment in the amount of $24,195,975.18 or such other amount corresponding to the Extension of Time that the Tribunal considers is reasonably and properly due to [Entes];

(2) An award from the Tribunal that the [Ministry] pays an amount of $151,889.38 corresponding to the interest on late payments;

(3) An award from the Tribunal that the [Ministry] pays an amount of $202,304.20 for the claim corresponding to guardrails and the end terminals/sloping sections of guardrails;

(4) An award from the Tribunal that the [Ministry] pays an amount of $185,748.62 corresponding to the claim for the Value Added Tax;

(5) An award from the Tribunal that the [Ministry] pays an amount of $39,969.47 corresponding to the claim for the Road and Emergency Tax;

(6) An award from the Tribunal that the [Ministry] pays an amount of $39,490.00 corresponding to the claim for damages to [Entes]'s equipment during the political unrest;

(7) An award from the Tribunal that the [Ministry] pays an amount of $123,936.54 corresponding to the claim for the Road Grader Case;

(8) An award from the Tribunal that the [Ministry] pays an amount of $379,519.65 corresponding to the claim for damages arising out of the sub-contract with Interakt;

(9) An award from the Tribunal that the [Ministry] pays an amount of $40,639.23 corresponding to the claim for the debts of the Nominated Subcontractor JASU;

(10) An award from the Tribunal that the [Ministry] pays to [Entes] such other relief as the Arbitral Tribunal deems appropriate under the circumstances, or such other amount that the Tribunal considers is reasonably and properly due to [Entes];

(11) An award from the Tribunal that the [Ministry] pays interest to [Entes] in the amount representing the interest for the period between the outstanding date and the date of the payment to the amounts claimed, and a fine; and

(12) An award from the Tribunal ordering the [Ministry] to pay: (i) the full costs of the arbitration (that is to say all monies paid to the Tribunal in

11

respect of the Tribunal's fees and other costs); and (ii) all of [Entes]'s costs reasonably and properly incurred in the arbitration.

Akinci Decl. Ex. A, at ¶ 133.  Entes also sought $1,335,068.37 for its costs and fees related to the Arbitration.  *Id.,* at ¶ 134.

33.     For its part, the Ministry in its Final Submission requested that Entes' claims be dismissed and that the Ministry be awarded "the arbitration costs, legal and other costs incurred in the course of the present arbitral proceedings, including also the following expenses of the [Ministry]":

(1) $225,000.00 for Arbitration costs;

(2) $130,000.00 for legal services of the [Ministry] Law Firm Partner;

(3) $357,150.00 for preparation of expert reports;

(4) $2,358.00 other miscellaneous expenses of the [Ministry];

(5) and other expenses connected with this Arbitration.

*Id*., at ¶ 137.  In a separate claim for Arbitration costs, the Ministry sought an additional $487,238 for legal advisors, expert reports, hearing expenses, and taxes.  *Id*., at ¶¶ 138, 769.

34.     On September 29, 2015, the Tribunal rendered its Award, unanimously finding that Entes was owed compensation for the extended timeframe of the Works project plus other associated costs (the "Awarded Amounts"), and further ordering as follows:

(i)  The [Ministry] must pay to [Entes]:

(a) $16,275,156.88 on account of the claim for Prolongation Costs;

(b) $59,506 on account of the claim for interest on late payment;

(c) $53,968.71 on account of the claim for Guardrails;

(ii)   The claims on account of (a) Value Added Tax, (b) Road and Emergency Tax, (c) Equipment Damaged During Political Unrest, (d) the Interakt case, (e) the Road Grader Case and (f) debts of the Nominated Subcontractor JASU are dismissed;

12

(iii)  The amounts awarded bear interest at one month LIBOR plus 2% from 13 May 2006 until full settlement;

(iv)  The [Ministry] shall pay US$225'000 to [Entes] on account of the share of the Tribunal's costs and fees advanced by [Entes] plus interest as per above (iii) from the date of this award;

(v)  A party that pays the share of the other Party in the additional amount ordered by the Tribunal in the Procedural Order on Cost shall be entitled to reimbursement of this payment.

(vi)  Each Party shall bear its own costs of the arbitration.

Akinci Decl. Ex. A, at ¶ 779.

35.     With regard to its award of interest, the Tribunal explained that it had evaluated Entes' and the Ministry's positions articulated in their Final Submissions.  *Id.,* at ¶¶ 747-752. Entes argued that "the contractual interest shall be applied to the interest on [Entes]'s claim in this arbitration" and that the applicable rate should be "the interest rate pursuant to contract or the legal interest rate under Kyrgyz Law (***whichever is higher***)."  *Id.,* at ¶ 748 (emphasis added). For its part, the Ministry "did not consider the case in which the Tribunal would find that some amounts were due to [Entes]; nor did it address the contractual basis of the interest claim."  *Id.,* at ¶ 751.

36.     The Tribunal took note of the Ministry's confirmation that the applicable legal interest rate under Kyrgyz Law includes "an additional penalty of 5%" but found that "the parties to a contract may make different arrangements for the payment of interest and under the principle of freedom to contract the contractual rates should be applied."  *Id.,* at ¶¶ 750, 753.

37.     The controlling provision of the parties' agreement concerning the interest due on unpaid amounts, Clause 60.8 of the CPA, provides in relevant part:

> In the event of the failure of the [Ministry] to make payment within the times stated, the [Ministry] shall pay to [Entes] interest ***compounded monthly at the rates stated in the Appendix to Tender*** upon all sums

unpaid from the date at which the same should have been paid, in the currencies in which the payments are due.

*Id.,* at ¶ 570; *see also id.,* at ¶ 755 (emphasis added).

38.     As the Tribunal further found, the Appendix to Tender referenced in Clause 60.8 identified the interest rate to be applied as "LIBOR + 2%."  *Id.,* at ¶ 757.  The Tribunal noted that Clause 60.8 "does not specify which LIBOR rate is applicable."  *Id.*  But "[s]ince Clause 60.8 provides for monthly compounding,  the Tribunal conclude[d] that the appropriate interest rate is the monthly LIBOR rate plus 2%."  *Id.*

39.     Accordingly, while the dispositive portion of the Award provides only that "[t]he amounts awarded bear interest at one month LIBOR plus 2% from 13 May 2006 until full settlement" (*id.,* at ¶ 779(iii)), the Tribunal explicitly stated that it was awarding interest at this rate "[o]n the basis of the considerations set out above."  *Id.,* at ¶ 779.  And as demonstrated in the immediately preceding paragraphs 35-38 of this Petition, the "considerations set out above" in the Award, including Clause 60.8 of the CPA on which the Tribunal based its award of interest, make clear that Entes is entitled to interest *compounded monthly* at one month LIBOR plus 2%.  As of the date of the Award, compound interest accruing monthly from May 13, 2006 to September 29, 2015 at one month LIBOR plus 2% resulted in a total monetary award to Entes (including interest) of over $600 million.  In the nearly three years since the Award was issued, compound interest has continued to accrue, such that the aggregate amount due and owing to Entes, as of the date of this filing, now totals nearly $2 billion.

40.     Despite numerous demands by Entes for payment of the amounts due under the Award, the Ministry has failed to pay any of the Awarded Amounts to Entes.

14

## ARGUMENT

41.     "Confirmation proceedings under the [New York] Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention." *Argentine Republic v. National Grid PLC*, 637 F.3d 365, 369 (D.C. Cir. 2011).   "[G]iven the strong public policy in favor of international arbitration, a party challenging an award under the New York Convention bears a heavy burden." *Belize Bank Limited v. Government of Belize*, 191 F. Supp. 3d 26, 37 (D.D.C. 2016).   Review of arbitral awards under the New York Convention is limited "to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id.*; *see also BCB Holdings Ltd. v. Government of Belize*, 110 F. Supp. 3d 233, 247 (D.D.C. 2015) ("Because the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature.").   Consistent with its purpose "to remove obstacles to confirmation," the Convention manifests a "general pro-enforcement bias."   *Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, Civ. A. No. 90–0169 (JGP), 1992 WL 122712, at *5 (D.D.C. May 29, 1992).

42.     The Petition should be granted because, as demonstrated below, (1) all statutory conditions for confirmation and enforcement are satisfied; and (2) none of the limited grounds for refusal to confirm exist.

### A.   Entes Has Satisfied All of the Statutory Conditions for Confirmation and Enforcement

43.     This Petition falls within the confirmation and enforcement regime of the Convention and satisfies the statutory requirements for confirmation and enforcement.

44.     Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.*, authorizes federal courts to enforce foreign arbitral awards that are governed by the New York Convention.   Article I(1) of the

Convention states that it "shall apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards in the State where their recognition or enforcement is sought."  Section 202 of the FAA provides that an award is considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."  9 U.S.C. § 202; *see Africard Co.  v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016).  Here, the Award arose from a legal relationship between Entes (an entity organized under the laws of Turkey) on the one hand and the Ministry (a foreign state) on the other hand.  Therefore, the Award is not "entirely between citizens of the United States."  Moreover, the legal relationship involved performance abroad in the Republic.  *See Africard Co. Ltd.*, 210 F. Supp. 3d at 123 (finding an award non-domestic "because it involves a dispute originating in Niger, and none of the parties are citizens of the United States").  Consequently, the Award is non-domestic and falls within the Convention.

45.     Articles II and IV of the Convention further require that a petition for enforcement be accompanied by a duly certified copy of the award and of the parties' written agreement to arbitrate.  A duly certified copy of the Award is appended to the Akinci Declaration as Exhibit A, and a true and correct copy of the GCC, which contains the parties' written agreement to arbitrate in Clause 67.3, is appended to the Akinci Declaration as Exhibit B.  Accordingly, these Convention requirements for confirmation and enforcement are satisfied.

46.     Moreover, this Court has jurisdiction to grant the Petition, and venue in this District is proper.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1330(a) and 1605(a)(6).  *See, e.g., Belize Social Developmental Ltd. v. Government of Belize*, 794 F.3d 99, 101-02 (D.C. Cir. 2015) (quoting § 1605(a)(6)'s statutory language).  Additionally, this Court

has subject matter jurisdiction under 9 U.S.C. § 203, which confers federal jurisdiction in actions arising under the New York Convention.  *See, e.g., Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 184 (D.D.C. 2016) ("The district courts of the United States ... shall have original jurisdiction over an action or proceeding falling under the Convention, regardless of the amount in controversy.").  This Court has personal jurisdiction over the Ministry under 28 U.S.C. § 1330(b), which provides for personal jurisdiction over foreign states as long as service is effected pursuant to 28 U.S.C § 1608(a).  *See Price,* 294 F.3d at 96 ("[F]oreign states are not 'persons' protected by the Fifth Amendment.").  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f).

47.     Finally, the Petition is brought within the three-year statute of limitations provided for by 9 U.S.C. § 207.  *See id.* ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.").  The Award was rendered on September 29, 2015, and the Petition is therefore within the three-year period.

**B.   None of the Limited Grounds to Refuse Confirmation and Enforcement Exist**

48.     The FAA mandates that a court "*shall* confirm the award" unless one of the grounds for refusal specified in the Convention applies.  9 U.S.C. § 207 (emphasis added); *see Belize Bank Ltd.,* 191 F. Supp. 3d at 27.  "[A] party challenging an award under the New York Convention bears a heavy burden."  *Id.*  "[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation, and the showing required to avoid summary confirmation is high."  *BCB Holdings Ltd.*, 110 F. Supp. 3d at 247 (internal quotations and citations omitted).

49.     None of the grounds for refusing enforcement of an award set forth in Article V(1) of the Convention applies here.  Nor do either of the grounds set forth in Article V(2) of the Convention apply.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully petitions this Court pursuant to Article IV of the Convention and 9 U.S.C. §§ 201, 202, and 207, to:

a.  enter an order confirming and enforcing the Award against Respondents;

b.  enter judgment that Respondent The Kyrgyz Republic is liable to Petitioner in the amount of $16,388,631.59 for costs associated with the Works, plus interest at one month LIBOR plus 2%, from May 13, 2006 as awarded in the Award, and $225,000 for Petitioner's share of the Tribunal's costs and fees, plus interest at one month LIBOR plus 2%, from September 29, 2015 as awarded in the Award;

c.  enter judgment that Respondent The Kyrgyz Republic is liable to Petitioner for post-judgment interest at the applicable statutory rate;

d.  enter an order requiring Respondent The Kyrgyz Republic to pay the costs incurred by Petitioner in connection with this proceeding; and

e.  award such further relief as may be just and proper.

Dated: New York, New York
      September 26, 2018

Respectfully submitted,

**CHAFFETZ LINDSEY LLP**

By:  /s/ Andreas A. Frischknecht
    Andreas A. Frischknecht
    DC Bar No. NY0213
    Theodore R. Debonis (pending *pro hac* admission)

    1700 Broadway, 33rd Floor
    New York, NY 10019
    Tel. (212) 257-6960
    Fax. (212) 257-6950
    a.frischknecht@chaffetzlindsey.com

    *Attorneys for Petitioner Entes Industrial Plants Construction and Erection Contracting Co. Inc.*

18