## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENTES INDUSTRIAL PLANTS,      :
CONSTRUCTION AND ERECTION      :
CONTRACTING CO. INC.,      :
     Petitioner,      :      Civil Action No.:     18-2228 (RC)
     :
     v.      :      Re Documents Nos.:    1, 19
     :
THE KYRGYZ REPUBLIC and THE,      :
MINISTRY OF TRANSPORT AND      :
COMMUNICATIONS OF THE KYRGYZ      :
REPUBLIC      :
     Respondent.      :

## MEMORANDUM OPINION

**DENYING RESPONDENTS' MOTION TO DISMISS THE PETITION TO CONFIRM FOREIGN ARBITRATION AWARD FOR *FORUM NON CONVENIENS*; CONFIRMING THE PETITION AS TO THE MINISTRY OF TRANSPORT AND COMMUNICATIONS OF THE KYRGYZ REPUBLIC; AND ORDERING SUPPLEMENTAL BRIEFING**

## I. INTRODUCTION

Petitioner Entes Industrial Plants, Construction and Erection Contracting Co. Inc., ("Entes"), a Turkish corporation, has filed a Petition to Confirm and Enforce a foreign arbitration award that it obtained by arbitrating against the Ministry of Transport and Communications of the Kyrgyz Republic ("the Ministry") in the Kyrgyz Republic ("the Republic"). Pet. to Confirm and Enforce Foreign Arbitral Award, ECF No. 1. Respondents the Kyrgyz Republic and the Ministry do not challenge the award or its confirmation on the merits but instead make two procedural arguments. First, they argue that the petition ought to be dismissed from this Court on grounds of *forum non conveniens*. Second and alternatively, they argue that if the petition is to be confirmed it should be confirmed only against the Ministry and not against the Republic because the Republic was not a party to the arbitration proceedings. For the reasons set forth

below, the Motion to Dismiss for *forum non conveniens* is denied, and the petition is confirmed

only against the Ministry. The Court orders supplemental briefing on the application of this

Circuit's caselaw to the question of whether the award should also be confirmed against the

Kyrgyz Republic.

## II. FACTUAL BACKGROUND

In 1999, the Ministry of Transport and Communications of the Kyrgyz Republic entered

into a contract with Entes to rehabilitate approximately 620 kilometers of road connecting the

two largest cities in the Kyrgyz Republic—Bishkek and Osh. *See* Uncitral Arbitration, Final

Award ("Award") ¶¶ 1, 24, ECF No. 1-3. The Bishkek-Osh road traverses the Tien Shan (or

Tien Chan) Mountains and has "numerous tight curves and steep gradients." *Id.* ¶ 28. Entes was

tasked with rehabilitating and improving "the carriageway, shoulders, slope stability, drainage

system, structures and road furniture" along with "construction of new alignments in some

sections," "repair of many existing bridges and widening them," "rehabilitation of two tunnels,"

plus "installation of new kilometre posts and traffic signs as well as the installation of road safety

features." *Id.* ¶ 29. The total contract amount, including 20% VAT, was in excess of $52 billion

U.S. dollars. *Id.* ¶ 2. The contract included a written agreement to arbitrate. Conditions of

Contract for Works of Civil Engineering Construction ¶ 67.3, ECF No. 1-4 at 44–45.

Just under three years were allotted for completion of the project, with a target

completion date set for December 2002. Award ¶ 3. Unfortunately, serious problems arose

which extended the project and drove up costs. *Id.* ¶ 34. These included "design changes,

additional works and late instructions, shortages of materials . . . inclement weather in particular

harsh winters and political unrest, in particular the 'Tulip Revolution' in March – April 2005."

*Id.* ¶ 35. The project was finally completed in October 2005. *Id.* ¶ 40. This litigation primarily

concerns the additional costs incurred by Entes by these delays. *See id.* ¶ 36. Entes claimed that it was owed an additional $22,982,039.25, but it was only awarded $1,161,870.19. *Id.* ¶¶ 48–49.

In an attempt to obtain the full amount it was owed under the contract, Entes initiated arbitration proceedings in Bishek in January 2009. *Id.* ¶¶ 52, 779. The Respondent in the arbitration was the Ministry; the Kyrgyz Republic itself was not a party. *Id.* ¶ 2. Six years later, on September 29, 2015, the Aribtral Tribunal issued an award, unanimously finding for Entes. *Id.* ¶ 779. The Ministry was ordered to pay a total of $16,613,631.59. *Id.* The vast majority of the award would "bear interest at one month LIBOR plus 2% from May 13, 2006 until full settlement." *Id.*

Subsequently, Entes began seeking confirmation and enforcement of the Award, but this Court was not the first place it turned. In November 2016, Entes obtained a decision confirming the Award from the Superior Court of Justice for Ontario, Canada. *See Entes Indus. Plants Constr. & Erection Contracting Co. v. The Kyrgyz Republic*, 2016 CarswellOnt 18228 (Can. Ont. Sup. Ct. J.) (WL). It also sought confirmation in Russian courts.[1] *See, e.g.*, Decl. of Kanybek Taalaibekovich Koshokov at Tab 6, ECF No. 19-5 at 87.

It was not until September 26, 2018, that Entes filed a Petition to Confirm and Enforce Foreign Arbitral Award in this Court. Pet. Entes named both the Ministry and the Kyrgyz Republic itself as respondents. *Id.* In the Petition, Entes calculated the total amount due and owing after interest was added as "nearly $2 billion." *Id.* ¶ 39. The Republic and the Ministry oppose confirmation of the Award and accordingly filed a motion to dismiss Entes's petition. Mot. to Dismiss Pet. to Confirm Foreign Arbitral Award, ECF No. 19. They challenged Entes's

---

[1] This Court has not been apprised of the status or outcome of the Russian proceedings. *See, e.g.*, Pet'r's Opp'n to Resp'ts' Mot. to Dismiss Pet. to Confirm Foreign Arbitral Award ("Opp'n") at 11 n.4, ECF No. 21.

calculation of interest on the Award, and Entes has since conceded the issue. *See* Opp'n at 2, ECF No. 21. The parties are now in agreement that the total amount of the Award—principal and interest—is only approximately $25 million. *Id.* Respondents also argued, and still maintain, that the Petition ought to be dismissed for *forum non conveniens*. Alternatively, they argue that if the Award is to be confirmed, it should only be confirmed against the Ministry, not against the Kyrgyz Republic. These issues have been briefed and the matter is now ripe for adjudication by this Court.

### III. LEGAL STANDARD

First, this Court addresses its jurisdiction and concludes that jurisdiction is proper under the Foreign Sovereign Immunities Act (FSIA). Under 28 U.S.C. § 1330, "[t]he district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state . . . with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." Both the Ministry and the Kyrgyz Republic qualify as a "foreign state" under the language of the FSIA. *Id.* § 1603(a) ("A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state . . . ."). But jurisdiction over actions against foreign states is limited to the enumerated exceptions to immunity in the FSIA. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Because of this limitation, a court must "satisfy itself that one of the exceptions applies" at "the threshold of every action in a District Court against a foreign state." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983).

Here, the arbitration exception in § 1605(a)(6) applies. Section 1605(a)(6) grants jurisdiction over actions "to confirm an award made pursuant to an arbitration agreement governed by an international treaty." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 203 (D.C. Cir.

2015).  For an action to qualify for this exception, the petitioner must show that "(1) a foreign

state has agreed to arbitrate; (2) there is an award based on that agreement; and (3) the award is

governed by a treaty signed by the United States calling for the recognition and enforcement of

arbitral awards."  *Id.* at 204 (calling these "the relevant jurisdictional facts") (internal quotation

marks and citations omitted).

In this action, Entes seeks to confirm an award made pursuant to its contract with the

Ministry and governed by the Convention on the Recognition and Enforcement of Foreign

Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517; *see also* 9

U.S.C. §§ 201 *et seq.* (implementing the treaty through amendments to the Federal Arbitration

Act).  Entes has produced a contract containing an arbitration agreement between itself and the

Ministry, ECF No. 1-4, which is a "foreign state" for purposes of FSIA.  (Whether the Kyrgyz

Republic is also properly joined as a respondent is a major issue in this case, and the Court

addresses it at length below.)  Entes has also produced the Award against the Ministry that it

obtained as the result of arbitration proceedings that took place pursuant to the agreement to

arbitrate in the contract.  The New York Convention, by its terms, governs the Award, as it is an

"award made in the territory of a State [the Kyrgyz Republic] other than the state [the United

States] where the recognition and enforcement . . . are sought."[2]  New York Convention art. I;

*Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999).  This Court

therefore has jurisdiction under § 1605(a)(6).

---

[2] Although neither the Award nor the contract specifically mentions the New York
Convention, Respondents have never suggested that it does not govern.

Second, the Court addresses the appropriate standard of review to apply in an action to enforce an arbitral award. In general, courts apply a deferential standard when reviewing arbitral awards. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

This deferential standard is akin to the deferential standard used when reviewing domestic arbitral awards. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013) ("Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.' . . . If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" (first quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995), then quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008))). The Supreme Court has described the deferential standard as allowing vacatur of an award not if "the panel committed an error—or even a serious error" but "only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671–72 (2010) (internal quotation marks and citations omitted). Similarly, the D.C. Circuit has held that "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [she] committed serious error does not suffice to overturn [her] decision." *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1180 (D.C. Cir. 1991) (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

In a proceeding to confirm a foreign award under the New York Convention, the district court is even more constrained and "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (citation omitted); *see also Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) ("Confirmation proceedings are generally summary in nature" because "the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award." (citing *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007))).

## IV.  ANALYSIS

The Respondents present no argument on the merits against the confirmation of the Award, but instead raise two procedural issues.  First, while they grant that jurisdiction is proper in this Court, they argue that the Petition ought to be dismissed on grounds of *forum non conveniens* because the Kyrgyz Republic's courts would be a superior venue.  Second, they argue that if the Petition is to be granted and the Award confirmed, it should only be confirmed against the Ministry, not the Republic itself.  The Court addresses each argument in turn.

### A.  *Forum non conveniens*

Typically, to apply the doctrine of *forum non conveniens*, a court must consider two questions: "(1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).  These questions are considered with "a substantial presumption in favor of a plaintiff's choice of forum." *Id.*  If an adequate alternative is available, and if the public and private interests would be considerably better

served by a decision in that forum, the court should dismiss the case without considering the merits or granting relief. *See id.* at 950–51. But before even getting to this analysis, Entes argues that Respondents' Motion to Dismiss on the basis of *forum non conveniens* should be denied because that doctrine is inapplicable to this case for two reasons. First, Entes argues that *forum non conveniens* is not among the limited enumerated grounds for denying confirmation of an arbitration award identified in the New York Convention. Second, Entes argues that this Circuit "expressly rejected *forum non conveniens* as a defense to an award enforcement action" in *TMR Energy Limited v. State Property Fund of Ukraine* ("*TMR*"), 411 F.3d 296 (D.C. Cir. 2005). Opp'n at 7, ECF No. 21. Although neither argument is entirely correct, this Court must deny the motion based on the D.C. Circuit's controlling precedent in *TMR*.

In *TMR*, the Petitioner, TMR Energy Limited ("TMR"), a Cypriot corporation, sought in the District of Columbia confirmation of an arbitration award that it obtained against the State Property Fund of Ukraine ("SPF") as a result of an arbitration held in Sweden. *TMR*, 411 F.3d at 298. SPF sought dismissal of the case in the District of Columbia, arguing that the federal court in the District of Columbia was a *forum non conveniens* for the proceeding, which concerned two foreign entities whose dispute centered around a state-owned oil refinery in Eastern Ukraine and who had arbitrated in Sweden. *Id.* at 298, 303. The district court refused to dismiss on the ground of *forum non conveniens*, and on appeal the D.C. Circuit was tasked with reviewing whether the district court's refusal to dismiss the case on that basis was "a 'clear abuse of discretion.'" *Id.* at 303 (quoting *Piper Aircraft*, 454 U.S. at 257). SPF argued on appeal that by refusing to dismiss the arbitration enforcement action on the basis of *forum non conveniens*, the district court had abused its discretion because it failed to balance the private and public interests at stake. But the Circuit agreed with the district court that such public and private interest-

balancing analysis was unnecessary because SPF had failed to meet its burden of identifying

"another forum adequate to the plaintiff's case." *Id.* The Circuit reasoned that courts outside the

United States—in Sweden or Ukraine, for instance—would not be an adequate forum to enforce

the arbitral award because "only a court of the United States (or of one of them) may attach the

commercial property of a foreign nation located in the United States." *Id.* The Circuit further

held that TMR did not have to establish that property located in the United States existed at the

time the enforcement action was brought because "[e]ven if the SPF currently has no attachable

property in the United States . . . it may own property here in the future and TMR's having a

judgment in hand will expedite the process of attachment." *Id.* Accordingly, because TMR

could not obtain a judgment allowing it to attach SPF's property in the United States anywhere

other than in the courts of the United States, the Circuit affirmed the district court's refusal to

dismiss the enforcement action on the basis of *forum non conveniens*. *Id.* at 304.

Entes would have the Court apply *TMR* in straightforward fashion and reject

Respondents' *forum non conveniens* argument, given that these Respondents, like SPF, may

possess property in the United States and bringing an action in the Kyrgyz Republic would not

allow Entes to attach such U.S.-based property. The Respondents, on the other hand, would have

the Court read *TMR* narrowly. Respondents emphasize a footnote that immediately follows the

above holding in *TMR* in which the Circuit stated:

> Accordingly, we do not consider TMR's alternative contention that, contrary to the
> Second Circuit's decision *In re Arbitration Between Monegasque de Reassurances
> S.A.M. v. NAK Naftogaz of Ukraine*, 311 F.3d 488 (2002), the doctrine [of *forum
> non conveniens*] has no place in an action to enforce an arbitration award.

*Id.* at 305 n.*. Based on this apparent limitation, Respondents argue that, although the *TMR*

decision may have ruled out *forum non conveniens* arguments in circumstances where the

respondent may have property in the United States in the future and where no fact-bound

arguments would benefit from litigation elsewhere, the Circuit otherwise remained silent as to the doctrine's application in other circumstances. Mem. of Law in Supp. of Resp'ts' Mot. to Dismiss Pet. to Confirm Foreign Arbitral Award, in Whole or in Part ("Mot. to Dismiss") at 30–31, ECF No. 19-2. And Respondents argue that *forum non conveniens* applies in this case *because* there are fact-bound arguments that would benefit from litigation in the Kyrgyz Republic. But the substance of the Second Circuit opinion cited in the *TMR* footnote helps clarify the contrast that the D.C. Circuit meant to draw. In that case, the Second Circuit considered, and rejected, the argument that the terms of the New York Convention precluded the application of *forum non conveniens* to petitions to confirm arbitration awards pursuant to the Convention. *Monegasque*, 311 F.3d at 495–96. The Second Circuit reasoned that *forum non conveniens* is a procedural doctrine and that Article III of the Convention provides that "the rules of procedure where the award is relied upon" should be applied. *Id.* at 496 (quoting New York Convention art. III). For this reason, the Second Circuit held that *forum non conveniens* could apply and should be considered. The *TMR* footnote upon which Respondents base their argument, then, only clarifies that the D.C. Circuit does not have to consider, as the Second Circuit had, whether *forum non conveniens* might be outright inapplicable in arbitration enforcement actions, because it has concluded that, even assuming the doctrine applied, *forum non conveniens* was no reason to dismiss TMR's petition.

The Respondents here are correct to note, then, that *TMR* did not go so far as to say the doctrine of *forum non conveniens* could never apply in an arbitration enforcement proceeding. But Respondents overlook the fact that *TMR* laid down a practical barrier to ever obtaining dismissal of a petition to enforce an arbitration award like this one based on *forum non conveniens*. That is because *TMR* requires that courts in this Circuit not dismiss a petition to

confirm an arbitration award on the basis of *forum non conveniens* when a foreign entity attempts to enforce an award against another foreign entity that might—even in the future—hold property in the United States. Thus, although the Circuit in *TMR* did not say that *forum non conveniens* does not *apply* to cases brought under the Convention, it did say that when applied in the context of a case like this one, it will not result in a dismissal.[3]

The *TMR* analysis thus controls in this case. Applying the doctrine of *forum non conveniens* to this case the Court must consider the availability of alternative forums, *Piper Aircraft*, 545 U.S. at 254 n.22, which means considering where remedies are available, not just whether the defendant can be served in a given court system, *id.*; *TMR*, 411 F.3d at 303. Following *TMR*, as this Court must, it is clear that *forum non conveniens* is no basis for dismissal here because no other court system can provide Entes with a judgment that it can use to attach property that is, or may someday be, held in the United States. *TMR*, 411 F.3d at 303. Accordingly, the Court will deny Respondents' Motion to Dismiss.

### B. The Appropriate Party Against Which the Award May Be Confirmed

The Respondents do not dispute that the Ministry is properly a respondent in this action because the Ministry was a party to the contract to arbitrate disputes and was a party to the arbitration that resulted in the issuance of an award against it. But Respondents contend that "unlike the Ministry," the Republic is not an appropriate party to this action because it "did not sign the underlying arbitration agreement, was not a party to the arbitration proceeding, and is

---

[3] The tension between the theoretical limitation of the *TMR* footnote and the practical impact of the holding is perhaps why the Circuit, in two subsequent unpublished opinions cited by the parties, said that "[i]n *TMR* we held that the doctrine of *forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations." *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016); *Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016).

not bound by the Award." Resp'ts' Reply in Supp. of Mot. to Dismiss the Pet. to Confirm

Foreign Arbitration Award, in Whole or in Part ("Reply") at 1, ECF. No. 22. As a result, they

argue, the FSIA's exception that allows jurisdiction over a foreign sovereign in a proceeding to

enforce an arbitration award, 28 U.S.C. § 1605(a)(6), cannot be applied against the Republic in

this proceeding. In response, Entes argues that Respondents are precluded from making this

argument because they did not raise it in enforcement proceedings in Canada. Opp'n at 11–12.

Moreover, the parties also disagree over what doctrine governs the question whether the Award

may be enforced against the Kyrgyz Republic, in the event that the issue is not precluded.

The Court agrees with the Kyrgyz Republic that Respondents are not precluded from

arguing that the Kyrgyz Republic is not properly a party to this litigation. The Court also agrees

with the Kyrgyz Republic's assessment of which legal standards ought to be applied to the

question of whether the Award can be enforced against it. However, the parties insufficiently

briefed the actual application of that doctrine to the facts at hand. Rather than rule without the

benefit of adversarial briefing on this critical question of law, the Court orders supplemental

briefing.

1. Issue Preclusion

As an initial matter, Entes argues that the Kyrgyz Republic is estopped from arguing that

the Award should not be enforced against it because an Order from the Superior Court of Justice

in Ontario, Canada has already settled this question and that court's order ought to have

preclusive effect in this litigation. Opp'n at 10–12. Entes's argument for preclusion proceeds in

two stages. For the issue preclusion argument to succeed, this Court must be satisfied that: it

should recognize the Canadian judgment in this Court; and that the principles of issue preclusion

apply to that court's judgment. Entes has not satisfied that standard.

Foreign judgments have long been recognized in the federal courts of the United States, provided that "there has been an opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice." *Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895); *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981). The party seeking recognition of the foreign judgment bears the burden of proof. *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 607 (D.C. Cir. 2013). The Kyrgyz Republic does not suggest that the Canadian court lacks competent jurisdiction or the relevant procedural guarantees—though neither does Entes do much to establish that these requirements have been met. For now, the Court can assume, without deciding, that the Ontario Judgment should be recognized, because Entes has not established that the principles of issue preclusion would apply even if the Court recognized the Canadian judgment.

The doctrine of issue preclusion, or collateral estoppel, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Canonsburg Gen. Hosp. v. Sebelius*, 989 F. Supp. 2d 8, 16 (D.D.C. 2013), *aff'd sub nom. Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295 (D.C. Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Issue preclusion has three requirements:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citations and footnote omitted). The party invoking issue preclusion, here Entes, has the burden of

establishing each of its elements.  *Democratic Cent. Comm. v. Wash. Metro. Transit Comm'n*, 842 F.2d 402, 409 (D.C. Cir. 1988).

Entes cannot rely upon the Canadian judgment to preclude the Kyrgyz Republic from arguing that it is not bound by the arbitration Award because Entes has not shown that the parties to the Ontario proceeding actually litigated whether the Kyrgyz Republic and the Ministry are one and the same for purposes of confirming the Award under the Convention.  To qualify as actually litigated, an issue must have been "properly raised, by the pleadings or otherwise, and . . . submitted for determination."  Restatement (Second) of Judgments ("Restatement") § 27 cmt. d (Am. Law Inst. 1982); *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("The Court . . . regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion.").  Here, there is no indication that the relationship between the Ministry and the Kyrgyz Republic was raised, submitted, or litigated in the Ontario court.  The decision in that case certainly provides no indication that the relationship was at issue, as it focuses instead almost entirely on expert-related issues.  *See Entes Industrial*, 2016 CarswellOnt 18228.  Nor has Entes identified any other documents from that litigation that might indicate substantive discussion of the matter.

When, as here, an issue was not actually litigated in a prior proceeding, courts cannot simply assume that the party that failed to raise the issue in the first litigation did so because it lacked a meritorious argument.  Courts cannot treat the failure to raise an issue as an implicit concession on that point.  The Restatement explains:

> There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action.  The action may involve so small an amount in that litigation that litigation of the issue may cost more than the value of the lawsuit.  Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all.  The interest of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the

adverse party are less compelling when the issue on which preclusion is sought has
not actually been litigated before.

Restatement § 27 cmt. e.  Accordingly, the Court will not speculate why the issue of whether the

Kyrgyz Republic is bound by the arbitration Award arose in this case but did not come up in the

Ontario litigation.  It is enough to recognize that it is a new issue in this case.  Consequently, the

Kyrgyz Republic is not precluded from arguing that the Award cannot be enforced against it

because it was not a party to the underlying arbitration.[4]

## 2.  Foreign Sovereign Immunities Act

Having confirmed that the Kyrgyz Republic is not precluded from making its argument

that the award cannot be enforced against it, the Court returns to reviewing the relevant statutory

framework.  The FSIA defines a "foreign state" broadly, to "include[] a political subdivision of a

foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  The

Kyrgyz Republic and the Ministry both qualify as a "foreign state" under this broad definition.

The only way a federal court can claim jurisdiction over a "foreign state" is if one of the

enumerated exceptions to the FSIA applies.  *Human*, 824 F.3d at 134 (D.C. Cir. 2016).  One of

these exceptions provides that sovereign immunity falls away "in any case . . . to confirm an

award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may

be governed by a treaty or other international agreement."  28 U.S.C. § 1605(a)(6).  The FAA, in

---

[4] Further, even if the issue had been litigated in the Ontario litigation, Entes has not
shown that the issue here is the same one.  The Restatement urges that preclusion may not be
appropriate for issues of law when either the claims, or the substantive law is not the same
between cases.  *Id.* § 28(2).  And another leading treatise states that "[i]ssues are not identical if
the second action involves application of a different legal standard, even though the factual
setting of both suits be the same."  Charles Alan Wright & Arthur R. Miller, 18 Federal Practice
and Procedure § 4417 (3d ed.) (August 2019 update) (quoting *Peterson v. Clark Leasing Corp.*,
451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam)).  Entes has provided no explanation of the
relevant principles of Canadian law that applied in the first action and has not compared these to
the governing standards in this Court.

turn, allows "any party to the arbitration" to seek confirmation of the award "against any other party to the arbitration." 9 U.S.C. § 207. The Ministry was unquestionably a party to the arbitration, and the Respondents do not dispute this. Respondents argue, however, that the Kyrgyz Republic cannot be sued pursuant to the arbitration exception because it was not a party to the arbitration and because the tribunal issued no award against it. Mot. to Dismiss at 21. The question before the Court, then, is whether the Kyrgyz Republic can appropriately be made a party to this action to enforce the Award when only the Ministry was a party to the underlying arbitration that resulted in the Award.

The starting point for the Court's analysis is *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Banec*"), 462 U.S. 611 (1983). That case concerned Banec, a trading bank established by Cuba's government in 1954 and dissolved by that same government in 1961. *Id.* The Supreme Court was tasked with determining whether Banec could invoke sovereign immunity to defend against counterclaims based on the Cuban government's actions, or whether it could be sued, as an alter ego of the Cuban government, for those actions. *Id.* at 613–19. As here, this was a question about "the attribution of liability among instrumentalities of a foreign state," and not a question about how to read the FSIA. *Id.* at 620 ("The [FSIA] is not to affect the substantive law of liability. Nor is it intended to affect . . . the attribution of responsibility between or among entities of a foreign state . . . ." (quoting H.R. Rep. No. 94–1487, 12 (1976))). *Banec* established that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Id.* at 626–27. This presumption can be overcome, but it is the starting point for considering vicarious liability between a sovereign and a juridically distinct sub-entity.

Entes argues against starting with *Banec*.  Instead, it argues that "[t]o draw the line between foreign states . . . and their presumptively separate agencies or instrumentalities," the Court must look to "the core functions" of the arguably separate unit—if these "core functions" are "governmental," then the separate entity "is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  Opp'n at 13 (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003)).  Accordingly, Entes argues that, because the Ministry's core functions are governmental, the Ministry and the Republic are one and the same entity and they are both subject to the arbitration Award despite the fact that the Award only named the Ministry.  Opp'n at 13.  But the "core functions" test is not relevant to the Court's inquiry.  The case from which Entes draws the "core functions" test, *Roeder*, concerned provisions of the FSIA that provided a cause of action against "officials, employees, and agents of foreign states," but arguably not against foreign states themselves.  *See Roeder*, 333 F.3d at 234 (citing 28 U.S.C. § 1605(a)(7) (2000) (current version at § 1605A)).  *Roeder* drew this "core functions" test from *Transaero, Inc. v. La Fuerza Area Boliviana*, 30 F.3d 148 (D.C. Cir. 1994), *Roeder*, 333 F.3d at 234, and Entes also cites *Transaero*, Opp'n at 13.  *Transero*, like *Roeder*, turned on the language of the FSIA, specifically because the FSIA's requirements for effecting service differed depending on whether an entity was "a foreign state" or an "agency or instrumentality" of one.  *Transaero*, 30 F.3d at 151; *see also DRC, Inc. v. Republic of Honduras*, 71 F. Supp. 3d 201, 213 (D.D.C. 2014) (explaining why the *Transaero* "core functions" test does not determine whether an arbitration award against a separate juridical unit of a foreign government can be confirmed against the sovereign itself).

The D.C. Circuit has held that the "core functions" test deals with "the meaning of the statutory terms" in the FSIA.  *TMR*, 301 F. 3d at 301.  The "core functions" test is applied, as in

*Transaero* and in *Roeder*, when the FSIA requires or permits something different depending on whether an entity is a "foreign state" or something else. *See also Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1358–59 (11th Cir. 2015) (applying the "core functions" test to determine whether Trinidad and Tobago's Minister of Finance was, under FISA, a "political subdivision" of his government entitled to be treated as the state would be or whether he was only an "agency or instrumentality" of his government and thus entitled to lesser statutory protections). Because the FSIA "was not intended to affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state," *Banec*, 462 U.S. at 620, the Kyrgyz Republic's liability for the Award against the Ministry may not turn on any definition in the FSIA. The "core functions" test is, therefore, not relevant here. *See DRC*, 71 F. Supp. 3d at 213–14 (reaching the same conclusion).

Instead, *Banec* provides the appropriate framework for the Court's analysis, just as it did in *DRC, Inc. v. Republic of Honduras*. *DRC*, 71 F. Supp. 3d at 203, 208–209. In *DRC*, as in this case, the Court considered whether an arbitration award rendered against a sub-entity of the Republic of Honduras could be confirmed against the Republic of Honduras itself. *Id.* As Judge Friedman explained in *DRC*, citing *Banec*, government instrumentalities are given a "presumption of separateness" from their sovereigns, "rooted in principles of comity." *Id.* at 209 (citing *Banec*, 462 U.S. at 626–27). But, as the D.C. Circuit has explained, "[t]hat presumption may be overcome in two situations: First, 'where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created'; and second, where recognition of the instrumentality as an entity apart from the state 'would work fraud or injustice.'" *Transamerica Leasing v. La Republica de Venezuela*, 200 F.3d 843, 847–48 (D.C. Cir. 2000) (quoting *Banec*, 462 U.S. at 629) (citations omitted). "Although the Supreme Court in *Banec*

recognized these as exceptions to the rule that a foreign sovereign is not *liable* for the acts of an instrumentality of the state, [the D.C. Circuit] ha[s] since held that they serve also as exceptions to the rule that a foreign sovereign is not *amenable* to suit based upon the acts of such an instrumentality." *Id.* at 848 (quoting *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 446–47 (D.C. Cir. 1990)) (emphases added); *see TMR*, 411 F.3d at 301.

Following *Banec*'s framework then, there are two questions to address in order to determine whether the arbitration Award can be confirmed, not just against the Ministry, but against the Kyrgyz Republic as well: (1) whether the Ministry is the type of entity entitled to the presumption of separateness in the first place; and (2) if it is, whether one of the *Banec* exceptions applies and the presumption of separateness falls away. *See DRC*, 71 F. Supp. 3d at 209 (laying out the same two questions).

In considering the first question, *DRC* identified some "characteristic features of independence," mentioned in *Banec*, that this Court may apply to the Ministry in order to determine whether the presumption of separateness applies to it. These telltale characteristics relevant to the separateness analysis are:

> Creation by an enabling law that prescribes the instrumentality's powers and duties; establishment as a separate juridical entity with the capacity to hold property and to sue and be sued; management by a government-selected board; primary responsibility for its own finances; and operation as a distinct economic enterprise that often is not subject to the same administrative requirements that apply to government agencies.

*DRC*, 71 F. Supp. 3d at 209 (citing *Banec*, 462 U.S. at 624).[5] The inquiry is not a searching one, and the bar that the Republic must clear in arguing its separateness from the Ministry is low

_____

[5] Entes argues, in at least a portion of its briefing, that the core function tests governs "the antecedent question of whether a particular party such as the Ministry here *qualifies as a presumptively separate instrumentality to begin with* (as opposed to a political subdivision)." Opp'n at 16. To the extent that the antecedent question Entes refers to is this first portion of the

because *Banec* holds that, for reasons of comity, the lower courts should respect a foreign sovereign's decision to establish an instrumentality with a distinct juridical identity. *Banec*, 462 U.S. at 626 ("Freely ignoring the separate status of government instrumentalities would result in substantial uncertainty . . . . [T]he efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration would surely be frustrated."). To examine whether the Ministry possesses these telltale characteristics, the Court must look, at least to an extent, to the Kyrgyz Republic's own laws. "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

If, after assessing the telltale characteristics described in *DRC* within the context of Kyrgyz law, the Court determines that the Ministry is entitled to a presumption of separateness, it moves on to the second question, whether the presumption of separateness is overcome in this case. The presumption of separateness is overcome in two scenarios: (1) when "a corporate entity is so extensively controlled by [the sovereign] that a relationship of principal and agent is created" or (2) when "recognition of the instrumentality as an entity apart from the state 'would work fraud or injustice.'" *Transamerica*, 200 F.3d at 847–48 (quoting *Banec*, 462 U.S. at 629). The principal-agent question, in turn, requires that the Court consider principles of agency law including both actual control and apparent authority. *E.g. DRC*, 71 F. Supp. 3d at 214–15 (citing *Transamerica*, 200 F.3d at 848–50). If Entes can establish that either factual scenario has been

---

*Banec* inquiry, it is again mistaken. The "core functions" test is about the status of the entity under the FSIA. *See Roeder*, 333 F.3d at 234.

met here, then the Kyrgyz Republic can be bound by the arbitration Award despite the fact that it was neither a party to the proceedings nor named in the Award.

Neither party has provided the Court with thorough briefing on these questions. Therefore, the Court now requests that the parties provide supplemental briefing that addresses how *Banec* applies to the relationship between the Kyrgyz Republic and the Ministry, specifically the questions of whether the Ministry is entitled to a presumption of separateness from the Kyrgyz Republic and, if so, whether that presumption is overcome based on principles of agency or fraud or injustice.

### C. Confirming the Award Against the Ministry

The Respondents do not dispute that the Court must confirm the Award if it does not vacate, modify, or correct it. *See* 9 U.S.C. § 9 ("[T]he court must grant [an order affirming the award] unless the award is vacated, modified, or corrected . . . ."). Nor do Respondents make any argument based on the reasons for refusing confirmation identified in the New York Convention. *See* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."). Thus, having rejected the argument for dismissal based on *forum non conveniens*, the Court will confirm the Award. However, the Court can only confirm the Award against the Ministry for now. The Court reaches no decision one way or the other whether the Award can or will also be confirmed against the Kyrgyz Republic after supplemental briefing.

### V. CONCLUSION

For the foregoing reasons, Entes's Petition to Confirm and Enforce Foreign Arbitral Award, ECF No. 1 is GRANTED IN PART as to the Ministry of Transport and Communications of the Kyrgyz Republic. Respondents' Motion to Dismiss for *forum non conveniens* is DENIED.

And the parties are ORDERED to provide supplemental briefing within 30 days as to how *Banec*

applies to the relationship between the Ministry and the Republic as set forth above.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 17, 2019                                        RUDOLPH CONTRERAS
                                                                      United States District Judge